UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

D‍awnyale S‍hanks,

   Plaintiff,

v.   No. 4:22-CV-00573-P

C‍ity of A‍rlington, et al.,

   Defendants.

## OPINION & ORDER

Before the Court are Defendant City of Arlington's, Defendant Police Officer Jessica Burns', and Defendant Police Officer Dylan Harmon's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Motions"). ECF Nos. 9 (Arlington), 29 (Burns), 30 (Harmon). For the reasons stated below, the Motions are **GRANTED**.

## INTRODUCTION

General Douglas MacArthur once said, "[e]xpect only 5% of an intelligence report to be accurate."[1] As for Plaintiff's briefing on these motions to dismiss, 5% accuracy might be an overestimation. Plaintiff's counsel seeks to revive a notice pleading standard that has been dead for over fifteen years, relies on authority that has conclusively been overturned more than once, and actively avoids addressing issues validly raised by Defendants on multiple occasions despite having over seventy-five pages of briefing to do so.

The pleadings and papers before the Court and the controlling precedents require the Court to find that Plaintiff cannot maintain this case.

---

[1] G‍eneral D‍ouglas M‍ac‍A‍rthur, R‍eminiscences 314 (1964).

## FACTUAL & PROCEDURAL BACKGROUND

On March 17, 2022, Arlington Police received a 911 call about an aggravated assault with a deadly weapon at a gas station. ECF No. 8 at 4. When officers with the Arlington Police Department arrived at the scene, the suspect—who was armed with a handgun—was at large in the area. *Id.* The officers—pursuant to a tip about the suspect's whereabouts—went to a nearby Super 8 motel. *Id.* At the motel, the officers asked a staff member if they knew where the suspect was. *Id.* The staff member mistakenly pointed the officers to room 225—stating that this was where the suspect was staying. *Id.* at 4–5. The two officers at the scene—Harmon and Burns—placed a phone call to the room and requested that the occupant step outside. *Id.* at 5. Plaintiff received the phone call and agreed to cooperate with the officers. *Id.* While Plaintiff exited the room that the officers believed was linked to the armed suspect, the officers pointed their guns at her until she dropped her belongings and was ruled out as a threat. *Id.*

After this, the officers detained Plaintiff for questioning about the whereabouts of the suspect and her potential involvement. *Id.* at 5–6. Plaintiff was placed—unhandcuffed—into the back of a patrol car for "approximately and hour" while the officers questioned her. *Id.* Plaintiff was released after the officers dismissed their suspicion of her involvement with the gas station incident and the suspect at large. *Id.*

Plaintiff subsequently sued the officers and the City of Arlington under 42 U.S.C. § 1983 and various state tort theories. *See* ECF No. 8. Defendants moved to dismiss (ECF Nos. 9; 29; 30), and Plaintiff timely responded (ECF Nos. 13; 36; 37). Thus, the motions are ripe for this Court's review.

## LEGAL STANDARD

Though Plaintiff's counsel seeks to transport this Court back to the time of notice pleading, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must

be supported by factual allegations." *Id.* at 679. But "a complaint [does not] suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotations omitted). The Court accepts all well-pleaded facts as true, viewing all facts in the light most favorable to and drawing inferences in favor of the nonmoving party. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

## ANALYSIS

### A. Claims Against Officers Burns and Harmon

Qualified immunity "shield[s] [government officials] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When officers assert qualified immunity, the burden shifts to the plaintiff to show that (1) she alleged a violation of a constitutional right, and (2) the defendant's conduct was objectively unreasonable according to clearly established law when the incident occurred. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).

Though this test appears to be straightforward, its application in the Fifth Circuit is often a morass of unpredictability. *Compare Crane v. City of Arlington*, 50 F.4th 453, 458 (5th Cir. 2022) (relying in part on extra-record sources such as the New York Times and The Guardian in finding no qualified immunity for officer's use of deadly force where suspect resisted arrest and ran over another officer with his vehicle) *with Ramirez v. Guadarrama*, 844 F. App'x 710, 712–17 (5th Cir. 2021) (holding qualified immunity barred suit when officers found suspect doused in gasoline, knew their tasers would ignite him, and quickly tased him, "causing him to burst into flames"). This uneasy analysis has been called the "QI dance." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022). But if any dancing is involved, it seems Cicero was correct when he said, "for no man, one may almost say, ever dances when sober, unless perhaps he be a madman."[2] Luckily, this case is rather simple—even

---

[2] Marcus Tullius Cicero, Pro L. Mvrena Oratorio 6.13 (63 B.C.).

3

under the perplexing Fifth Circuit precedents—and the Court will thus refrain from dancing.

### 1. Excessive Force

Plaintiff alleges that the officers pointing guns at her amounts to excessive force in violation of her Fourth Amendment rights. ECF No. 8–10. To state a prima facie excessive force claim, a plaintiff must allege "(1) [an] injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (citations omitted). "The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id.* (quotation omitted). The Court thus considers "the facts and circumstances of each particular case." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). Under the first prong of qualified immunity, Plaintiff has failed to show a violation of a constitutional right.

As to the *first* element, Plaintiff's alleged injury is negligible considering the Fifth Circuit's injury standards. "To state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*." *Freeman*, 483 F.3d at 416. If there is an actual injury, the Court characterizes the extent of the injury using a sliding scale—the greater the injury, the more likely the Court will find that the force was clearly excessive and unreasonable. *See Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). Plaintiff alleges that because the officers briefly pointed guns at her, it caused her "embarrassment, humiliation, psychological harm, pain and suffering, and loss of enjoyment of life." ECF No. 8 at 9. Outside of this, Plaintiff does not allege that the officers ever touched her, handcuffed her, or exerted any physical force against her. Plaintiff's alleged injury likely falls well below the standard required by the Fifth Circuit to make an excessive force claim. Even if this type of injury meets the standard, Plaintiff's injuries are "minor," considering that "[c]ourts have found similar or worse injuries to be minor." *Solis*, 31 F.4th at 982 (citing *Buehler v. Dear*, 27 F.4th 969, 983 (5th Cir. 2022); *Westfall v. Luna*, 903 F.3d 534, 549–50 (5th Cir. 2018)).

Because of this, "the limited extent of [her] injuries" detracts from the next two elements. *Solis*, 31 F.4th at 982.

As to the *second* element, the officers use of force was not clearly excessive. Use of force is "clearly excessive" if it is "grossly disproportionate to the need for action under [the] circumstances." *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1230–31 (5th Cir. 1988). The use of force here was not "clearly excessive" given the urgent circumstances and the information reasonably available to the officers at the time. *See* ECF No 8 at 3–5. The officers were responding to an aggravated assault where an armed suspect was at large in the area. *Id*. This armed suspect posed a threat to both the safety of the officers and the community at large. After being directed to Plaintiff's room by the hotel staff, the officers were well within their right to proceed with caution. Given the possibility of an armed suspect hiding or emerging from the room, the officers trained their guns and asked Plaintiff to come out of the room. This was reasonable considering the situation. Lastly, the limited nature of Plaintiff's injury weighs against a finding of clearly excessive force.

As to the *third* element, the officers' use of force was not clearly unreasonable. Again, the officers were responding to an urgent circumstance and—according to all Plaintiff's factual allegations—did not exert any force outside of briefly training their weapons on Plaintiff while diffusing the situation. *See* ECF No 8 at 3–5. This is not outside the realm of reasonable conduct, especially considering Fifth Circuit precedent. *See Ramirez*, 844 F. App'x at 712–17 (finding no excessive force where officers found suspect doused in gasoline, knew their tasers would ignite him, and tased him anyway which "caus[ed] him to burst into flames" and die from severe burn injuries).

After analyzing the excessive-force elements under the first prong, it is clear that no constitutional violation took place. But even if Plaintiff were able to establish a prima facie excessive force claim, her counsel—inexplicably—failed to point to any caselaw with similar facts to this case that clearly establishes a violation of Plaintiff's constitutional rights. Thus, Plaintiff completely fails to overcome the second prong of qualified immunity.

5

In conclusion, Officers Burns, and Harmon both enjoy qualified immunity as to Plaintiff's excessive force claim.

## 2. False Arrest, Unlawful Imprisonment, and Wrongful Detention

The Court next addresses the two prongs of qualified immunity on Plaintiff's false arrest, unlawful imprisonment, and wrongful detention claims.

Under the Fourth Amendment, "a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave." *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (citing *Michigan v. Chesternut*, 486 U.S. 567, 572, (1988)). Whether a seizure is a mere investigatory stop, or a full-blown arrest determines the constitutionality of an officer's conduct. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968). An investigatory stop requires "reasonable suspicion" but if a stop exceeds the reasonable duration and scope required to dispel the reasonable suspicion of crime, it turns into an unlawful arrest. *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

Plaintiff alleges that her hour-long questioning constituted an arrest. ECF No. 8 at 6. The Court disagrees.

### i.  *Investigatory Stop*

If an officer has reasonable suspicion that a suspect is involved in criminal activity, he may detain the suspect to confirm or dispel the suspicion. *Terry*, 392 U.S. at 9. Reasonable suspicion must be supported by specific and articulable facts, and rational inferences from those facts. *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (citing *Terry*, 392 U.S. at 9). That said, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (citing *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). An officer's mistake of fact or law may provide the basis for reasonable suspicion so long as the mistake is reasonable. *Id.*

6

Here, the officers both had reasonable suspicion to believe that Plaintiff was engaged in criminal activity. In an urgent circumstance, both officers were informed that the armed suspect of an aggravated assault was inside a specific hotel room. *See* ECF No 8 at 3–5. Though Plaintiff did not match the description of the suspect it was reasonable for the officers to detain her as she may have known or been involved with the armed individual based on the information from the hotel clerk. *Id.* That the clerk of the hotel mistakenly sent them to the wrong room is irrelevant to the analysis because—based on the facts before the officers—this was a reasonable mistake. *See Heien*, 574 U.S. at 60–61. Given the facts known to the officers it was reasonable for them to think—at the very least—that there might have been an association between the two. Thus, there was reasonable suspicion supporting the initial detention of Plaintiff.

An investigatory stop must be limited in duration and geographic scope, staying close to the original purpose of the stop, and no more intrusive than necessary to dispel the officer's suspicion. *Royer*, 460 U.S. at 500. When officers exceed the scope of this authorized limit, the investigatory stop develops into an arrest—thus requiring a warrant or probable cause to be lawful. *Id.* When making this judgment, district courts "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). As with most legal standards "a creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished." *Id.* But "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, itself, render the [seizure] unreasonable." *Id.* at 686–87 (citing *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973)).

Plaintiff claims she was detained in the back seat of a patrol car—unhandcuffed—for one-hour while the officers questioned her and searched the hotel room along with the surrounding area. ECF No. 8 at 6–8. Defendants in turn provided multiple examples of investigatory stops that exceeded the one-hour mark without becoming an arrest. ECF

7

Nos. 30 at 16–17; 41 at 8–9. Though none of these cases are exactly on point to the facts before the Court, they do display the incredibly context dependent nature of the reasonable time and scope analysis for investigatory stops. *See Illinois v. McArthur*, 531 U.S. 326, 332 (2001) (validating a two-hour stop to obtain a warrant); *United States v. Montoya de Hernandez*, 473 U.S. 531 (1985) (validating a 16-hour detention involving smuggler); *United States v. Williams*, 185 F. App'x 866, 869–70 (11th Cir. 2006) (validating a one-hour stop of plaintiff handcuffed in a police car to investigate a shooting).

A one-hour investigatory stop in this urgent scenario is reasonable. But even if it were not, Plaintiff's claim fails to rebut qualified immunity as—once again—her counsel failed to meet his burden of proving that the officers conduct was objectively unreasonable according to clearly established law when the incident occurred. *See Waltman*, 535 F.3d at 346. Again, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel . . . the conclusion for every like situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pasco v. Knoblauch*, 566 F.3d 572, 578–79 (5th Cir. 2009) (quoting *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997)).

Plaintiff's counsel abandoned his post and actively avoided engaging with Defendants' contention that the officers' actions resulted in an investigatory detention and not an arrest. As a result, Plaintiff merely asserts that the officers "lacked probable cause to detain and arrest Plaintiff." *See* ECF No. 36 at 10–12. Plaintiff's counsel—in effect—completely missed the issue here despite having two twenty-five-page chances to address it. *See* ECF Nos. 36; 37. In fact, in fifty pages of briefing, Plaintiff never cited *Terry*, but cited multiple out-of-circuit cases discussing probable cause. ECF No. 36 at 11–12. Further, Plaintiff cited no cases discussing a reasonable or unreasonable time for a stop. *See* ECF Nos. 36 at 10–12; 37 at 10–12. And because Plaintiff's counsel

8

fled from his burden, he and his client will get "neither glory nor any help" from this Court.[3]

The officers thus enjoy qualified immunity as to their investigatory detention of Plaintiff. Plaintiff's claims against the officers related to her alleged arrest are thus **DISMISSED**.

3. State Law Claims – IIED and Invasion of Privacy

Under the *Erie*, federal courts exercising supplemental jurisdiction over state law claims must apply state substantive law and federal procedural law. *Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 F. App'x 327, 332 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Court thus applies Texas substantive law to Plaintiff's Intentional Infliction of Emotional Distress ("IIED") and Invasion of Privacy claims.

*i. IIED*

Plaintiff brings an IIED claim against all three Defendants. ECF No. 8 at 12–13. This claim is barred by Texas Civil Practice and Remedies Code Section § 101.106.

Section 101.106 "requires a plaintiff to decide on a theory of tort liability before suit is even filed." *Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 536 (Tex. 2017). As a result, "a plaintiff must decide *at the outset* whether an employee acted independently and is thus solely liable or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Id.* (emphasis in original) (quotations omitted). So, "if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010).

Plaintiff argues that because her claims were not filed under the Texas Tort Claims Act, § 101.106(e) does not apply. ECF No. 13 at 15–

---

[3] "Of men who have a sense of honor, more come through alive than are slain, but from those who flee comes neither glory nor any help." HOMER, A. T. MURRAY & WILLIAM F. WYATT, ILIAD (2003).

9

16. Plaintiff's counsel relies on a case that was overruled nearly seventeen years ago. *Meroney v. City of Colleyville*, No. 2-05-195-CV, 2006 WL 1452103, at *5 (Tex. App.—Fort Worth 2006, pet. granted, judgment vacated and remanded by agreement). Though it is possible Plaintiff's council made a mistake and was not making a bad-faith argument, a quick scan of Westlaw—which Plaintiff's counsel links to—makes this hard to believe:

> 🚩 Rehearing Overruled August 3, 2006
> ⚠ Overruling Risk Alexander v. Walker, Tex., June 6, 2014

Regardless, this line of reasoning has also been conclusively rejected by the Texas Supreme Court since 2008. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008); *see also Bustos*, 599 F.3d at 464 ("We defer to the Supreme Court of Texas and hold that the election of remedies provisions in § 101.106 apply to state law intentional tort claims against a governmental unit and its employees.").

Defendant City of Arlington moves to dismiss the IIED claim against Officers Harmon and Burns. ECF No. 9 at 18. This is in line with § 101.106 as both the city and the officers were sued under the same theory for the same conduct. ECF No. 8 at 12–13. Thus, "the employees shall immediately be dismissed." § 101.106(e).

Plaintiff's IIED claim is thus **DISMISSED** as to officers Burns and Harmon.

    ii.    *Invasion of Privacy*

Plaintiff brings an Invasion of Privacy claim, but it is unclear whether it is brought under federal or state law. Under either theory, however, this claim fails. In Texas, a claim for "invasion of privacy" can involve three torts: (1) intrusion upon a person's right to be left alone in her own affairs; (2) publicity of private information about a person; and (3) appropriation of some element of the person's identity for commercial use. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578–79 (Tex. 1994). Plaintiff's complaint states:

10

> Defendants intentionally intruded on Plaintiff's solitude, seclusion, or private affairs when they purported to investigate Plaintiff for a matter in which she was not involved in . . . . Defendants' intrusion would be highly offensive to a reasonable person, and it was highly offensive to Plaintiff. ECF No. 8 at 13.

Based on Plaintiff's complaint, the only plausible claim for invasion of privacy is intrusion upon seclusion. The elements for Texas intrusion on seclusion are: "(1) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs; and (2) the intrusion would be highly offensive to a reasonable person." *Martin v. Guevara*, 464 F. App'x 407, 410 (5th Cir. 2012) (cleaned up). To state a valid claim, the intrusion must be "unreasonable, unjustified, or unwarranted." *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014).

Here, both officers were investigating an aggravated assault with an armed gunman on the loose when they encountered Plaintiff. ECF No. 8. The officers were informed that the gunman was inside a hotel room and investigated the matter reasonably, given the urgent circumstances. *Id.* The officers' subsequent investigation of Plaintiff—related to her presence in the room—was not an unreasonable intrusion upon Plaintiff's privacy and was an ordinary exercise of their lawful duties. *Id.* Plaintiff's state law privacy claim thus fails.

The Constitution protects individuals from required disclosure of highly personal matters to the government and preserves the freedom to make personal decisions without government interference. *Ramie v. City of Hedwig Vill.*, 765 F.2d 490, 492 (5th Cir. 1985) (citing *Whalen v. Roe*, 429 U.S. 589, 598–602 (1977)). But this right is not unlimited. *Id.* When officers engage in questioning suspects of criminal conduct, the governments interest generally outweighs a Plaintiff's right to privacy. *Id.* at 493. To determine whether questioning violates a plaintiff's right to privacy, courts must balance the alleged invasion of privacy with the government's legitimate interests. *Id.* at 492.

Plaintiff alleges that she was questioned by the officers for an hour about an aggravated assault committed by an armed gunman in the area. ECF No. 8 at 8–9. Plaintiff does not allege that the officers' line of

11

questioning was inappropriate or outside the scope of the governments valid interest in investigating a crime. Nor does Plaintiff allege that the government had no interest in questioning her. On the face of the facts alleged in the complaint, the government not only had a valid interest in investigating the crime and protecting the community at large, but also had an interest that outweighed any constitutional privacy interest alleged by Plaintiff.

Plaintiff's counsel—despite having fifty pages to do so—once again did not address any of Defendants' briefing on Plaintiff's privacy claim. ECF Nos. 36; 37. Despite this complete dereliction of duty, this claim still fails.

Plaintiff's invasion of privacy claim is thus **DISMISSED**.

## B. *Monell* Claims - City of Arlington

Municipal liability requires showing of: (1) an official policy or custom; (2) of which a policymaker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom. *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002). A municipality is not subject to liability for merely employing a tortfeasor. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). Thus, municipal liability requires action attributable to the municipality that is the direct cause of the constitutional violation. *Id.*

Plaintiff fails to meet the first element. "For a municipality to be liable on account of its policy, the plaintiff must show, among other things, either (1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights; or (2) that the policy was adopted or maintained by the municipality's policymakers "with 'deliberate indifference' as to its known or obvious consequences . . . a showing of simple or even heightened negligence will not suffice." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). Official policies are usually found in the form of written statements, ordinances, or regulations. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Where a plaintiff does not plead a written policy, ordinance, or regulation, she must show

widespread practices that are "so common and well-settled as to constitute a custom." *Id.* (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

Proving a "policy or custom" under a failure to train or supervise claim is difficult standard to meet and requires a showing of "deliberate indifference to the rights of persons with whom the [untrained or unsupervised employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011). This generally requires a showing of other repeated instances of the same conduct—enough to put the municipality on notice. *See Jackson v. Texas*, 959 F.3d 194 (5th Cir. 2020) (upholding dismissal when a plaintiff failed to identify an actual municipal policy and only alleged a single incident); *see also Skyy v. City of Arlington*, 712 F. App'x 396, 401 (5th Cir. 2017) ("By relying on their single incident with APD officers . . . Appellants' . . . Complaint fails to allege sufficient facts to demonstrate either deliberate indifference or a City custom."). But sometimes—under very rare circumstances—a single instance of misconduct is enough to warrant a failure to train. *See Brown v. Bryan Cnty.*, 219 F.3d 450, 461 (5th Cir. 2000). This, however, requires the plaintiff to meet a very high standard. Specifically, "in order to find [a municipality] liable for a single decision of the policymaker, there must be evidence that would support a finding that it was obvious that the offending officer in question was 'highly likely to inflict the particular injury suffered by the plaintiff.'" *Brown*, 219 F.3d at 461 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 412 (1997)).

Plaintiff alleges no other instances of misconduct prior to the events giving rise to this suit. As established above, this is ordinarily insufficient to establish notice of insufficient training or supervision under most circumstances. Knowing this, Plaintiff argues that the single instance of misconduct by the officers is enough. ECF. No 13 at 15. Yet, Plaintiff provides no pleading—nor even a threadbare rule recitation—that would support or allege a finding that either officer was "highly likely to inflict the particular injury suffered by the plaintiff." *Brown*, 219 F.3d at 461 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 412).

As a result, Plaintiff has failed to allege a policy or custom under *Monell*. Because the policy or custom is not present, the court need not address the knowledge or moving force elements.

Thus, Plaintiff's Monell claims against Defendant City of Arlington are **DISMISSED**.

### C. IIED Claim - City of Arlington

Under *Erie*, federal courts exercising supplemental jurisdiction over state law claims must apply state substantive law and federal procedural law. *Songcharoen*, 561 F. App'x at 332. The Court thus applies Texas substantive law to Plaintiff's IIED claim.

Defendant City of Arlington contends the governmental immunity shields it from Plaintiff's IIED claim. The Court agrees. Municipalities in Texas enjoy governmental immunity which shields governmental units from lawsuits unless immunity has been waived by the Texas Legislature. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). The Texas Tort Claims Act "waives immunity for the negligent acts of government employees in specific, narrow circumstances" and is construed narrowly. *Id.* The Texas Tort Claims Act explicitly states that it does not waive immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort." TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2).

Plaintiff asserts a claim that arises out of an intentional tort: IIED. ECF No. 8. Because immunity has not been explicitly waived by the Texas legislature for suits arising under this claim, Plaintiff is barred from bringing it against the City of Arlington.

Plaintiff's IIED claim against the City of Arlington is thus **DISMISSED**.

### CONCLUSION

Plaintiff's pleadings are severely lacking and Plaintiff's counsel—instead of directly engaging with Defendants' arguments—chose to either retreat from valid arguments or obfuscate with bad law instead.

14

As to Plaintiff's claims against the officers, counsel failed to properly respond to many of the arguments raised in the briefing and completely failed to address the second prong of qualified immunity. Counsel further ignored all arguments made by the officers about his client's tort claims. As to Plaintiff's claims against the city, counsel made threadbare assertions and cited standards that have been conclusively overturned for over fifteen years. It is therefore **ORDERED** that this case is **DISMISSED** without prejudice.

Plaintiff seeks leave to replead, which the Court is willing to grant. But before allowing this, it is **ORDERED** that Plaintiff's counsel must present a copy of this opinion to Plaintiff. It is further **ORDERED** that Plaintiff must file an affidavit confirming that she has read the Court's opinion **within fourteen days** of its entry.

**SO ORDERED** on this **21st day of December 2022.**

*[signature: Mark T. Pittman]*

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE